IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN
_____

KATHLEEN ADAMS and SNAP-SAVER, LLC,

               Plaintiff,

                                       MEMORANDUM AND ORDER
  v.                                          07-C-313-S

NEWELL RUBBERMAID INC.,
and TARGET CORPORATION,
               Defendants.
_____

     Plaintiffs Kathleen Adams ("Adams") and Snap-Saver, LLC ("Snap-Saver") commenced this patent infringement action alleging that Rubbermaid Premier container storage systems (hereinafter the Premier system) which are made, sold and marketed by defendant Newell Rubbermaid Inc. ("Newell") infringe on Adams' United States Patent number 5,692,617 (hereinafter the '617 patent) which Adams has exclusively licensed to Snap-Saver.  Plaintiffs also allege that Target Corporation ("Target") is infringing on the '617 patent by selling the Premier system.  Jurisdiction is based on 28 U.S.C. §§ 1331 and 1338(a).  The matter is presently before the Court on defendant Newell's motion for summary judgment.  The following facts are undisputed or those most favorable to plaintiffs.

BACKGROUND

     The '617 patent discloses an invention for a storable system of containers.  The containers themselves are usually reusable and used to store goods such as food.  The invention involves several containers comprised of covers and vessels where container covers

can be connected to one another and then the stack of covers can be connected to the container vessel, or group of stacked vessels, at the base or bottom of the vessel(s) for convenient and organized storage of the containers.

Claims 1 and 4, the independent claims of the '617 patent, provide as follows:

> 1. A system of storable containers which comprises:
>
> a plurality of vessels, each said vessel having a base formed to surround a cavity having an open top, each said vessel partially insertable into said cavity of another said vessel to configure said vessels as a sequential vessel stack, said vessel stack including one vessel having an exposed top and one vessel having an exposed base;
> a plurality of covers, each said cover having a first side and a second side, each said first side of said cover attachable to a corresponding vessel to enclose said cavity of said vessel;
> means for attaching said first side of each said cover to said second side of another said cover, including a plurality of first fasteners and a plurality of second fasteners, one said first fastener attached to said first side of each said cover, one said second fastener attached to said second side of each said cover, said covers configurable as a stack of covers by positioning said covers in a sequence and interconnecting each adjacent first fastener and second fastener, said cover stack including one cover having an exposed first side and one cover having an exposed second side; and
> means for attaching said vessel stack to said cover stack, including a plurality of third fasteners, one said third fastener attached to said base of each said vessel, said vessel stack attachable to said cover stack by interconnecting said second connector of said cover having an exposed second side to said third connector of said vessel having exposed base, wherein said third connector of said vessels and said second connector of said covers are compatible snap-together fasteners to configure

>     said vessel stack and said cover stack as a storage
>     stack, single containers removable from said
>     storage stack by removing one said vessel and one
>     said cover from said storage stack.
>
> . . .
>
> 4. A system of storable containers which comprises:
>
> a plurality of vessels, each said vessel including a
>     base formed to surround a cavity having an open
>     top, each said base also having a connector, said
>     connector positioned axially opposite said open top
>     of said cavity, each said vessel partially
>     insertable into said open top of another said
>     vessel to configure said vessels as a sequential
>     vessel stack, said vessel stack including one
>     vessel having an exposed connector; and
> a plurality of covers, each said cover attachable to a
>     corresponding vessel to enclose said cavity, each
>     said cover formed with a first connector and a
>     second connector, said first connector of each
>     cover attachable to said second connector of
>     another cover to configure said covers as a
>     sequential cover stack, said cover stack including
>     one cover having an exposed second connector and
>     wherein said connector of said vessels and said
>     first connector of said covers are compatible snap-
>     together fasteners.

'617 patent col. 5, ll. 30-57 and col. 6, ll. 1-9, 19-37. The preferred embodiment of the invention provides that

> In general, the connector [on the base of the vessel] **22**
> may be selected from a wide range of differing connector
> types. Preferably, however, the connector **22** is a female
> snap-type connector and is fabricated to be substantially
> flush with the base **16** of the vessel **12**. . . . The cover
> **14** also includes a first connector **30** attached to the
> first side **24** and a second connector **32** attached to the
> second side **26**. The first connector **30**, like the
> connector **22**, is preferably fabricated as a female snap-
> type connector. Additionally, the second connector **32** is
> preferably fabricated as a male snap-type connector.

Id. at col. 3, ll. 55-59 and col. 4, ll. 1-6.

The Premier system (i.e., the accused product) is a system for the storage of reusable food containers.  The Premier system provides for the connecting of container covers into a cover stack and connecting the cover stack to the base of a vessel or stack of vessels.  One side of each cover in the Premier system contains an inner depression with a set of four lips and an outer depression with a separate set of four lips.  The inner depression set of lips provide the connection point or method between a cover and the base of a vessel.  The outer depression set of lips provide the connection point or method between covers.  Based on the location of each depression the connection methods are not interchangeable, i.e., the inner depression set of lips cannot be the connection method between covers and the outer depression set of lips cannot be the connection method between a cover and the base of a vessel.

## MEMORANDUM

Under Federal Rule of Civil Procedure 56 summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Goldstein v. Fidelity & Guar. Ins. Underwriters, Inc., 86 F.3d 749, 750 (7th Cir. 1996) (citing Fed. R. Civ. P. 56); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Furthermore, the Court's function in a summary judgment motion "is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is

a genuine issue for trial." Anderson, 477 U.S. at 249. Additionally, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. at 248.

Patent infringement analysis involves two steps. First, the patent claims must be interpreted or construed to determine their meaning and scope. Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995). Second, the properly construed claims are compared to the process or product accused of infringing. Id. The first step of this analysis, claim construction, is a matter of law exclusively for the court. Id. at 970-71. To establish infringement plaintiffs must prove that each claim element is present in the accused product, either literally or by equivalence. Dawn Equip. Co. v. Ky. Farms Inc., 140 F.3d 1009, 1015 (Fed. Cir. 1998). Conversely, defendants can prevail by demonstrating that at least one element of the asserted claim is absent in their product.

Examination of the claims' language is where the well established process for claim construction begins. The language is given its ordinary meaning as it would be understood by one of ordinary skill in the relevant art, given its context and the other patent claims. Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001). This initial construction is then considered in light of the specification to determine whether the inventor expressed a different meaning for the language, whether the

5

preferred embodiment is consistent with the initial interpretation and whether the inventor specifically disclaimed certain subject matter. Id. at 1342-43. The specification takes on a more important role if the claims' language is particularly ambiguous. Id. Finally, the interpretation is examined for consistency with the patent's prosecution history and any disclaimers made therein. Id. at 1343.

In this case, defendant Newell seeks summary judgment arguing that the Premier system does not infringe on the '617 patent because it does not satisfy one of the elements in the '617 patent's independent claims. More specifically, Newell argues that the '617 patent "requires that the second connector[1] [be] compatible with and capable of connecting to **both** (i) an adjacent cover **and** (ii) the bottom side of the vessel" and that the Premier system lacks this element. (Def. Newell's Mot. for Summ. J. Br. 20-21) (emphasis in original). Newell further argues that the Premier system does not contain the element because it has two separate connectors on the top of each cover and the second connector only connects with another cover and the third connector only connects a cover to the base of a vessel.

---

[1] The terms "fastener" and "connector" are used interchangeably in the patent. However, the term "connector" is used more often. For simplicity and to avoid confusion the parties use the term "connector", and for the same reasons the Court will also use the term "connector".

6

Conversely, plaintiffs argue that the Premier system does contain a single "connector" that can connect with either another cover or a vessel base. More specifically, plaintiffs argue that what Newell refers to as the third connector on top of its covers is really part of its second connector. Furthermore, plaintiffs argue the fact that the covers in the Premier system connect to other covers using a different method of connection than the method that connects covers to the base of vessels does not save the Premier system from infringement because there is no limitation in the '617 patent's independent claims requiring that covers have a common connector that allows covers to connect to covers using the identical method of connection that is used to connect covers to vessel bases.

The ordinary meaning of the independent claims' language requires as one element that each cover have a "connector" that facilitates connection to another cover and connection to the base of a vessel. The ordinary meaning of "connector" is "something that connects." See Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1361 (Fed. Cir. 2004) (citation omitted) (reasoning that it was correct to define "connector" as a name for a structure.). Contrary to what defendant argues, a "connector" is not limited to providing a single connection. At a minimum a "connector" must connect "one object to another" (see Def.'s Reply

Br. 8-9) but it may also connect that one object to more than one other object.

Moreover, the term "connector" by itself does not limit the methods used to connect one object to another. For example, in Claim 1 the "second connector" found on a cover and the "third connector" found on a vessel base are referred to as "compatible snap-together" connectors. '617 Patent, col. 6, ll. 3-5. The phrase "compatible snap-together" necessarily limits the term "connector" by requiring a compatible snap-together method of connection between a cover and a vessel base. However, without the phrase "compatible snap-together" modifying "connector" the methods for connecting a cover to a vessel base could have been limitless. Accordingly, one of ordinary skill in the art would understand that a "connector" can connect one object to several other objects and that a "connector" can use different methods of connection to connect to different objects.

Other language in both the independent and dependent claims further supports such an interpretation of the term "connector". For example, dependent Claims 3 and 6 limit the method of connection between covers to a "compatible snap-together" method. '617 Patent, col. 6, ll. 15-18 & 41-44. It follows that the independent claims are broader and do not require such a limitation which permits a limitless number of methods for the connection of covers. See IP Innovation LLC v. Lexmark Int'l, Inc., 424 F. Supp.

2d 1078, 1086 (N.D. Ill. 2006) (discussing how the doctrine of claim differentiation creates a presumption that each claim in a patent differs in scope from other claims).  Also, in Claim 1 the "second connector" is used to connect cover to cover and cover to vessel base, and in Claim 4 the "first connector" is used to connect cover to cover and cover to vessel base.  Such language supports that a "connector" can connect one object, in this case a cover, to several other objects, in this case another cover or a vessel base.

The specification further supports the above interpretation of a "connector" by referring to "a wide range of differing connector types."  '617 Patent, col. 3, ll. 56-57.  Accordingly, there is nothing to suggest that the patentee was expressing a different meaning for "connector" than its ordinary meaning, i.e., the term "connector" was not being limited to a specific type of connector or method of connection (e.g., a snap-together connector or a connector that can only connect two objects).

The description of the preferred embodiment explains that it is preferable that one connector on each cover be a "male snap-type connector" and that the other cover connector and the connector on the vessel base be "female snap-type connectors" so as to allow "the second connector **32** of any particular cover **14** [to be] interconnectable with the connector **22** of any vessel **12** and interconnectable with the first connector **30** of any cover **14**."

'617 Patent, col. 4, ll. 25-28.  However, this discussion of "preferable" connector types and connection methods does not suggest claim limitations on the patented invention.  See Rexnord Corp., 274 F.3d at 1344 ("[A]n applicant is not required to describe in the specification every conceivable and possible future embodiment of [the] invention.").  It is legally improper to import components from the preferred embodiments into the claims.  Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 345 F.3d 1318, 1327 (Fed. Cir. 2003).  Because the "preferable" connector types and connection methods found in the specification are absent from the claims themselves and Adams specifically mentions the use of a wide range of "connectors", the ordinary meaning of "connector" is not disclaimed within the specification.

Furthermore, nothing in the prosecution history indicates that the patentee disclaimed having a "connector" on the cover to connect cover to cover and cover to vessel base using different methods of connection.  The sparse prosecution history of the '617 patent demonstrates that the patentee narrowed her patent scope to those cover stacks connected to vessel bases from those cover stacks that merely fit over the open tops of vessels.  However, despite defendant's assertion to the contrary, this limitation did not require Adams to either limit the connection of covers to the same method of connection used between covers and vessel bases or limit the cover to cover connection to using the same connector

used to connect cover to vessel base. Accordingly, the prosecution history does not limit the "connector" used for cover to cover connection to being interconnectable using the same method and/or connector used for cover to vessel base connection.

Properly construed the independent claims of the '617 patent have an element that requires a "connector" on the cover that facilitates cover to cover and cover to vessel base connection; furthermore, the "connector" is not limited to connecting cover to cover using the same method of connection used to connect cover to vessel base.  In its argument for non-infringement defendant asserts that it does not have such <u>a</u> "connector" but instead has <u>two</u> separate and distinct connectors that perform the function of the one "connector" in the '617 patent.  However, defendant is mistaken.

What defendant labels as two separate and distinct connectors are actually mere separate and distinct points or methods of connection.  On the Premier system's covers the outer depression with its four lips provides the method of connection between a cover and another cover and the inner depression with it four lips provides the method of connection between a cover and a vessel base.  Those two methods of connection are each a part of one "connector" found on top of the Premier system's covers.  The fact that the Premier system uses different methods of connection for cover to cover and cover to vessel base connection does not rescue

11

the product from literal infringement because the pertinent element of '617 patent's independent claims does not require that the "connector" used to connect cover to cover and cover to vessel base use the same method of connection. Accordingly, although the Premier system uses different methods of connection it continues to contain a "connector" on the top of each cover that facilitates cover to cover and cover to vessel base connection.

Based on the undisputed facts, defendant's Premier system infringes on the element of the '617 patent which requires a "connector" that facilitates connection to another cover and to the base of a vessel. Based on that one element defendant has failed to prove as a matter of law that it is entitled to judgment of non-infringement.

### ORDER

IT IS ORDERED that defendant's motion for summary judgment is DENIED.

Entered this 15th day of November, 2007.

BY THE COURT:

/s/

_____
JOHN C. SHABAZ
District Judge